UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELZY L. DENNIS,<br><br>           Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br><br>           Defendant. | Case No. 2:22-cv-04515-SB-PD<br><br>ORDER TO SHOW CAUSE FOR FAILING TO TIMELY APPEAR AND ORDER TO SHOW CAUSE FOR VIOLATIONS OF RULE 11 |

      Defendant Nike, Inc. filed a motion to dismiss Plaintiff Telzy L. Dennis's Second Amended Complaint (SAC) and noticed the motion for hearing on February 10, 2023 at 8:30 a.m.  On February 7, Plaintiff's counsel, Jose Hernandez, requested to appear remotely.  Despite the untimeliness of the request, the Court granted it on February 9 in light of counsel's family obligations.  In the same order, the Court advanced the hearing to 8:00 a.m.:

> The Court ADVANCES the hearing on Defendant's motion to dismiss, Dkt. No. 57 , to 8:00 a.m. on Friday, February 10, 2023. Plaintiff's counsel's request to appear remotely at the hearing is GRANTED.  Instructions for remote appearance can be found on Judge Blumenfeld's webpage.

Dkt. No. 61.[1]  The order was sent to Mr. Hernandez at the email address he has provided to the court, jhernandez@garycarlinlaw.com.  Dkt. No. 61 (indicating that notice was sent to that email address).

---

[1] The Court advanced the hearing because of an ongoing trial scheduled to begin at 8:30 a.m.  The hearing in this case was the only scheduled matter before 8:30 a.m.

1

Plaintiff's counsel failed to appear until approximately 8:15 a.m. and only after the courtroom deputy (CRD) emailed him to ask whether he was planning to join remotely.  When Mr. Hernandez finally joined, he represented that he was not aware that the Court had advanced the hearing until he received the CRD's email that morning.  Yet Mr. Hernandez also stated that he was aware that the Court had granted his request for a remote appearance the prior day.  Given that the Court had granted the request for a remote appearance in the same short order that advanced the hearing, Mr. Hernandez's claimed unawareness raises questions about his candor with the Court.  It is **ORDERED** that Mr. Hernandez shall show cause at a hearing on **March 3, 2023, at 8:30 a.m.** in Courtroom 6C why the Court should not impose sanctions, including monetary sanctions, for his failure to timely appear at the hearing as ordered and for what appears to be a misstatement about not being aware of the time of the hearing.  Mr. Hernandez shall file a written response to this OSC no later than **9:00 a.m. on February 22, 2023**, including a sworn declaration that discloses whether he received the email notification of the order advancing the hearing.  Failure to timely respond to the OSC or appear at the hearing will result in the imposition of sanctions.

The Court also learned at the hearing that Plaintiff and his counsel may have violated their obligations under the federal rules.  Rule 11 provides that an attorney who files a paper with the Court "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b).  Before filing a complaint, an attorney must both conduct a reasonable investigation of the factual assertions in it and confirm that the legal basis of the complaint is warranted by law or a good faith argument about the law.  *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986).  One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers."  *Id.* at 1536 (internal quotation marks omitted).  Rule 11(c) authorizes the Court to impose sanctions when attorneys violate their duties under Rule 11(b).  Payment of reasonable attorneys' fees and costs "directly resulting from the violation" of Rule 11 may be imposed as sanction.  Fed. R. Civ. P. 11(c)(4).  A court has "wide discretion in determining the appropriate sanction for a Rule 11 violation." *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987).

2

Plaintiff filed this lawsuit claiming copyright infringement. In dismissing the first amended complaint, the Court noted that Plaintiff had failed to adequately describe the allegedly copyrighted work:

> [Plaintiff] vaguely describes his copyrighted work as "consist[ing] of a series of a shoe design patterns that incorporated original design elements and ornaments"—i.e., "a pattern and accompanying data compilation that provided a written graphical stencil of a shoe insole featuring plastic covered, visible springs." But Plaintiff fails to describe Nike's shoes, which is necessary to show that the designs share even "conceptual similarities" for purposes of drawing an inference of copying. Plaintiff also fails to identify the protectable elements of his work and to "juxtapose them against those same elements in the defendant's infringing work." Without more information about the original and purportedly infringing designs, Plaintiff's allegations are insufficient.

Dkt. No. 49 at 3 (citations omitted). The Court gave Plaintiff leave to amend.

Plaintiff filed the second amended complaint and attached an exhibit that purported to contain the copyrighted work that had been registered with the U.S. Copyright Office. Dkt. No. 56-2 (Exhibit B). Exhibit B includes (1) hand drawings of a shoe containing springs in the sole (Hand Drawings); (2) pictures of a shoe that differs significantly from those drawings (Digital Photos); (3) matching hand and digital drawings of a shoe that also differ from the Hand Drawings (Digital Drawings); and (4) a brochure for "Telzy Shoe Corp" that describes boots and sport, medical, and causal shoes (Brochure). *Id*. Paragraph 15 of the SAC defines the "Copyrighted Work" to include the contents of Exhibit B:

> Plaintiff's Telzy Spring Heel Shoes contains protected elements independently created fixed on the bottom at the midsole of the shoe's heel. These visual protected elements are arranged in small circular columns. There are four small circular columns and are arranged in a square formation. In the middle of each circular columns there is a circular ring wrapping around each individual circular column. These protected elements are clearly identifiable and labeled in Plaintiff's technical drawings to point out his expression of his original work, the circular column springs. This gives Plaintiff's Copyrighted Work a distinct appearance and look

by its one of a kind midsole. The Plaintiff's Copyrighted Work is attached to this Complaint as **Exhibit B.**

SAC ¶ 15.

Plaintiff also included in his SAC a digital photograph of his purported shoe design along with technical drawings—which he defined as his "Copyrighted Work"—and compared them to "Defendant Nike's Infringing Design" as follows:



*Plaintiff Telzy Spring Heel Shoes - Copyrighted Work*

*Defendant Nike's Infringing Design*



Id. ¶ 38.  Plaintiff then alleged that the "protected elements" of his "Copyrighted Work" were the four "small circular columns" depicted "on the bottom of the midsole of the shoe's heel."  Id. ¶ 39.  The four circular columns appear only in the digital photograph of the purportedly "Copyrighted Work," and not in the technical drawings.[2]  Plaintiff alleged in the SAC that the "Copyrighted Work" had been registered with the U.S. Copyright Office and had received a registration number. Id. ¶ 16.

At oral argument, the Court asked Mr. Hernandez whether the digital photographs, including the blue-and-white photograph above, were submitted to the U.S. Copyright Office as alleged.  Mr. Hernandez responded that his client had represented to him—and that Mr. Hernandez was "representing to the Court"—that "everything is included within his copyright registration."  The Court then inquired

---

[2] One of the drawings contains six circular columns, including four straight heel springs and two "arch springs," which do not appear to be visible to the consumer.

4

whether Mr. Hernandez independently investigated the accuracy of his client's representation. Mr. Hernandez explained that he had done so, and that he had learned that his client's representations were not true. Mr. Hernandez acknowledged that he knew of the falsity before he filed the SAC because he had visited the website of the U.S. Copyright Office and saw that his client had not submitted the photographs for copyright registration. When asked why he misrepresented the facts in the SAC, counsel stated that "[t]he client insisted," and he "was left with no choice but to – to include everything."

Filing the SAC with the photographs appears to have been done for an "improper purpose." Fed. R. Civ. P. 11(b)(1). Mr. Hernandez plainly intended to include the photographs as part of the registered "Copyrighted Work" to advance his client's case; and he and his client clearly viewed the photographs as significant in asserting the claims in the SAC. Mr. Hernandez admitted at the hearing that this was a point of debate, if not contention, between him and his client, who "insisted" that the photographs were submitted to the U.S. Copyright Office for registration. Plaintiff then relied on the depiction in the photographs of four circular columns in the heel of the shoe for his claim of infringement of protected elements of his copyrighted work. To make matters worse, Plaintiff's counsel appears to have been deliberately dodgy about what his client had submitted for copyright registration. As noted in the order dismissing this case, the SAC and the opposition to the motion to dismiss contain vague and contradictory allegations of what had been submitted. Plaintiff's counsel continued to dodge at the hearing, noting at one point: "I know I just contradicted myself."

The Court is concerned that Plaintiff's counsel may not understand his professional obligations and the consequences of violating them. The judicial system exists to protect important rights that are fundamental to a fair society. But the system is not cost free: filing a lawsuit is a serious matter that imposes substantial economic and other burdens on the parties, and it taxes the limited resources of the court. In this case, Defendant has had to file two motions to dismiss, and the Court has had to review them, analyze the issues, conduct hearings, and prepare written rulings. The admittedly false allegation and the accompanying obfuscation have made the task needlessly more difficult.

Accordingly, Plaintiff and his counsel are ORDERED show cause at a hearing on **March 3, 2023, at 8:30 a.m.** in Courtroom 6C why they should not be sanctioned under either Rule 11 or the Court's inherent authority, including the payment of Defendant's attorney's fees and costs or other monetary sanctions, for

making misrepresentations in the SAC, related briefing, and/or at oral argument.[3] Plaintiff and Plaintiff's counsel shall file a written response to this OSC in the form of a sworn declaration no later than **9:00 a.m. on February 22, 2023.** Failure to timely respond or timely appear at the hearing will result in the imposition of sanctions. The Court also directs Defendant to submit the fees and costs incurred in defending this action no later than **9:00 a.m. on February 22, 2023**.

    IT IS SO ORDERED.

Date: February 13, 2023

                                                                      Stanley Blumenfeld, Jr.
                                                                     United States District Judge

---

[3] The Court is also considering whether Mr. Hernandez's conduct should be reported to the State Bar.